RECEIVED
JUDGE, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 1/27/15
MB

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| STINE, LLC | : | DOCKET NO. 2:13-03224 |
| VS. | : | JUDGE TRIMBLE |
| USA on behalf of INTERNAL REVENUE SERVICE | : | MAGISTRATE JUDGE KAY |

### MEMORANDUM RULING

Before the court are two motions: "Motion for Summary Judgment" (R. #14) filed by plaintiff, Stine LLC ("Stine") and the "Government's Motion for Summary Judgment" (R. #32) filed by the United States of America. In its motion, Stine seeks to have the government ordered to refund taxes it paid under protest. The government's motion seeks a ruling from this court that Stine is not entitled to take an accelerated depreciation allowance granted by the Gulf Opportunity Zone Act of 2005 (hereinafter referred to as the "Go Zone" allowance); the government disallowed the incentive allowance because the relevant buildings[1] were not open for business prior to December 31, 2008.

On January 21, 2015, the court heard oral arguments as to the motions; the parties have submitted their summary judgment evidence and fully briefed their arguments. For the following reasons, Stine's motion will be granted and the government's motion will be denied.

### FACTUAL STATEMENT

The undisputed facts are as follows: Stine, LLC is a retail operation that among other things sells home building material and supplies. This matter was filed by Stine to recover corporate income

---

[1] The buildings were newly constructed in Broussard and Walker, Louisiana.

taxes and interest collected from Stine by the Internal Revenue Service ("IRS").[2] In its 2008 tax returns, Stine took the Go Zone allowance which was a 50% depreciation of two (2) buildings constructed in Walker and Broussard, Louisiana. The accelerated depreciation deduction created a loss for 2008 which allowed Stine to carry back those losses for the 2003, 2004 and 2005 tax years. Thus, after filing the appropriate forms, Stine received a refund for the 2003, 2004 and 2005 tax years. The IRS disallowed Stine's Go Zone depreciation deduction and assessed Stine with taxes owed in the amount of $2,164,486.00 for the tax years 2003 through 2008. Stine remitted payment in this amount with a Notice of Deficiency Waiver.[3]

Stine is seeking a refund of its corporate income taxes which it alleges the IRS erroneously collected in the amount of $2,164,486.00 for the tax years 2003 through 2008, plus interest on the refund pursuant to IRC § 661, and attorney fees, costs and any other sums allowed by law.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[4] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[5] A dispute about a

---

[2] The IRS is an agency of defendant, the United States of America.

[3] Stine filed Amended Corporation Income Tax Returns containing the refund claims for the tax years in question; the IRS issued a Notice of Disallowance.

[4] Fed. R.Civ. P. 56(c).

[5] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[6] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[7] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[8] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[9] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[10] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[11]

## LAW AND ANALYSIS

The accelerated depreciation allowance taken by Stine involved tax incentives enacted by Congress to stimulate the economy, business activity and capital investment in and around Southeast and Southwest Louisiana after the devastation caused by Hurricanes Katrina and Rita in 2005. The "Go Zone" legislation, among other things, allowed for an immediate 50% deduction for

---

[6] Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

[7] Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).

[8] Anderson, 477 U.S. at 249.

[9] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

[10] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[11] Anderson, 477 U.S. at 249-50.

nonresidential real property "placed in service" after August 28, 2005 and before January 1, 2009.[12]

IRC § 1400N(d)(1)(A) is the Go Zone incentive depreciation provision and provides in pertinent part:

> (A) the depreciation deduction provided by section 167(a) for the taxable year in which such property is placed in service shall include an allowance equal to 50 percent of the adjusted basis of such property... .
>
> To qualify, property must meet the following conditions:
>
> (I)   be property which is described in section 168(k)(2)(A)(I), or,
>       be property which is nonresidential real property or residential rental property,
> (ii)  substantially all of the use of the property must be in the Gulf Opportunity Zone and is in the active conduct of a trade or business by the taxpayer in such zone,
> (iii) the original use of the property in the Gulf Opportunity Zone commences with the taxpayer on or after August 28, 2005,
> (iv)  property that is acquired by the taxpayer by purchase (as defined in section 179(d)) on or after August 28, 2005, but only if no written binding contract for the acquisition was in effect before August 28, 2005, and
> (v)   the property is **placed in service** by the taxpayer on or before December 31, 2007 (December 31, 2008, in the case of nonresidential real property and residential rental property)."[13]

The parties' only dispute in the motions for summary judgment is when the property was "placed in service." Stine maintains that when the depreciable assets– the buildings– were substantially complete, the buildings were then ready and available for their intended use – to store and house equipment, racks, shelving and merchandise. Stine presented as summary judgment evidence the deposition testimony and affidavit of the building's architect, Stephen M. Viguerie, and

---

[12] 26 U.S.C. § 1400N(d)(1)(A) and (d)(2)(A); 26 U.S.C. § 167(a).

[13] IRC § 1400N(d)(2)(A)(emphasis added).

4

other relevant documents including certificates of completion and occupancy[14] which establishes that the buildings were substantially complete, and limited occupancy was granted.[15]

The government's position is that because the two buildings were not open for business, the taxpayer has failed to meet the December 31, 2008 "placed in service" deadline. Therefore, the taxpayer did not qualify and was not entitled to the Go Zone tax incentive.

The government argues that the depreciation allowance offends the "matching principle" because the revenue Stine would receive from the buildings will not be matched with the depreciation deduction taken within a taxable year. We find this argument totally without merit. The Go Zone depreciation allowance which allows a 50% depreciation deduction in the first year the asset is placed in service inherently offends the matching principle. It is a tax subsidy purposefully created to increase business investments and stimulate the economy. As noted by Stine, by its very nature, the Go Zone allowance mismatches expenses with any corresponding revenue.

It is undisputed that both stores had been issued certificates of occupancy which allowed them to receive equipment, shelving, racks and merchandise as well as the appropriate personnel to install and or stock said equipment, shelving, racks and merchandise. Furthermore, neither party dispute the fact that on December 31, 2008, the stores were not open for business and the certificates of occupancy did not allow the public, which this court understands to be customers, to enter the buildings.

IRC § 1400N(d)(1)(A) states that the Go Zone depreciation is governed by IRC § 167 and

---

[14] Plaintiff's exhibit C; plaintiff's exhibit E, pp. 28-29, 42-43, 46, 56, 82-83, 86, 94-95 and 99; Plaintiff's exhibit F.

[15] Plaintiff's exhibit C.

the related treasury regulations. Treas. Reg. § 1.167(a)-10(b) provides that the depreciation period for an asset begins when the asset, in this case, the building, is "place in service." "Placed in service" is defined as follows:

> Property is first placed in service when first placed in a condition or state of readiness and availability for a specifically assigned function, whether in a trade or business, in the production of income, in a tax-exempt activity, or in a personal activity. . . . In the case of a building which is intended to house machinery and equipment and which is constructed, reconstructed, or erected by or for the taxpayer and for the taxpayer's use, the building will ordinarily be placed in service on the date such construction, reconstruction or erection is substantially complete and the building is in a condition or state of readiness and availability. Thus, for example, in the case of a factory building, such readiness and availability shall be determined without regard to whether the machinery or equipment which the building houses, or is intended to house, has been placed in service. However, in an appropriate case, as for example where the building is essentially an item of machinery or equipment, or the use of the building is so closely related to the use of the machinery or equipment that it clearly can be expected to be replaced or retired when the property it initially houses is replaced or retired, the determination of readiness or availability of the building shall be made by taking into account the readiness and availability of such machinery or equipment. . . .[16]

During oral arguments and in their memoranda, the government argues that the case law indicates that an asset for a retail operation must be open for business in order for the depreciation recovery to commence. The government relies on three cases: Sealy Power, Ltd v. C.I.R.,[17] Piggly Wiggly Southern, Inc. v. Comm'r,[18] and Brown v. Comm'r,[19]

In Brown, first we note that this case is not final; it involves a bonus depreciation deduction for an airplane, not a building. In reading the lengthy, but thorough opinion, the tax court repeatedly

---

[16] 26 C.F.R. § 1.167(a)-11.

[17] 46 F.3d 382 (5th Cir. 1995).

[18] 84 T.C. 739 (1985).

[19] 2013 WL 6244549, *10 (Tax. Ct. 2013).

discounted the testimony of the taxpayer and found that his evidence and his testimony was not credible. The court concluded that because the taxpayer testified that use of a conference table and larger enhanced display screens was necessary to meet the specific needs of his business clients, without these added components, the asset was not fully functional. Thus, the tax court found that the taxpayer did not place the airplane in service for his insurance business during the tax year at issue. Again, we reiterate, this case is not final.[20]

In Sealy, the court noted that to determine the trade or business of the taxpayer, one must examine the "substance of [taxpayer's] intended business activity."[21] The Sealy court involved component parts of an electric power generating facility. The taxpayer maintained that the "placed in service" test should apply separately to each component of the facility as opposed to the facility as a whole. The court concluded that for purposes of the "placed in service" test, the facility functionally formed a single property, as opposed to a number of interdependent components. The Sealy case does not involve a building which houses merchandise, shelving and racks and functions as a retail operation, rather than a power generating facility, and thus is not applicable.

In Valley Natural Fuels v. Commissioner,[22] the tax court was asked to determine when an ethanol distillation plant was placed in service for purposes of depreciation, the investment tax credit and business energy credit. The purpose of the business was to produce ethanol and the purpose of the asset was to produce ethanol. The Valley Natural court expressly noted that the asset in which

---

[20] The court contacted the Tax Court and according to the docket, this is a consolidated case; a final judgment has not been rendered or the case is still open, and a status report is due March 16, 2015.

[21] Sealy Power, Ltd., 46 F.3d at 390.

[22] T.C. Memo. 1991-341 (1991).

the items in dispute were claimed and disallowed was not the building, but the distillation equipment. Thus, the court clearly noted the distinction between a building and equipment for depreciable assets.

Notably, the taxpayer in Valley Natural, relied on Fort Howard Paper v. Comm'r.[23] for the proposition that its "equipment" did not have to be operational to be placed in service. However, the asset in Fort Howard involved a "building" used to house a turbine, which the tax court determined was placed in service years before its equipment (a second turbine) was installed and/or operational. The Valley Natural court clearly distinguished a building from equipment noting as follows: "In this case (Valley Natural), however, the building was not the asset on which the items in dispute were claimed and disallowed".[24]

We find based on the case law and the relevant statutory law, that there is a marked difference in a building as opposed to equipment and how the tax courts determine when these assets are placed in service.

The Piggly Wiggly case relied upon by the government, decided when certain equipment was placed in service for purposes of the investment tax credit. We find for the reasons set forth above that this case does not apply because it concerns equipment, not buildings.

Stine cites and relies on Williams v. Commissioner,[25] wherein the taxpayer purchased a building on July 1, 1981 as part of his muffler installation and auto repair business. The building required substantial improvements, however, the taxpayer claimed that the building was placed in

---

[23] T.C. Memo 1977-422 (1977).

[24] Id. at p. 7.

[25] T.C.M. 1203, T.C. Memo 1987-308 (1987).

8

service on July 1, 1981 relying on the undisputed fact that he had "opened for business" based on occasional muffler and auto repairs. The court completely disregarded the fact that the building was open for business and/or could function to provide the business's operations, and instead totally relied on the fact that the taxpayer had failed to submit evidence as to when the improvements to the building had been completed. The court concluded that the building was placed in service when the refurbishing had been completed, not when the business was open for business.

Stine argues that this case is in conformity with Treas. Reg. § 1.167(a)-11(e)(1)(I) as stated herein above. Stine also relies on Prop. Reg. § 1.168-2(e)(3) which provides:

> For purposes of this section, a building shall be considered placed in service (and, therefore, recovery will begin) only when a significant portion is made available for use in a finished condition (e.g., when a certificate of occupancy is issued with respect to such portion) . . . .

and

the IRS's Audit Technique Guide for Rehabilitation Tax Credits which provides guidance for rehabilitated buildings under IRC § 47 as follows:

> [A] 'Certificate of Occupancy' is one means of verifying the 'Placed in Service' date for the entire building (or part thereof).

The government's position is that the building must be open for business. The tax law cases, regulations, revenue rulings and tax guides say otherwise. Stine has presented undisputed summary judgment evidence that the buildings had been issued certificates of occupancy; they were substantially complete, and were fully functional to house and secure shelving, racks and merchandise. Even though the government adamantly suggests that the buildings were placed in service when they opened their doors for business, the government has failed to cite any authority

9

whatsoever to show that "placed in service" equates to "open for business." In fact, during oral arguments, the government candidly admitted, that no such authority currently exists.

We do not believe the IRS is "hiding the ball" from the taxpayer, but instead opine that whether a building is open for business is of no moment; rather the building is placed in service when it is substantially complete meaning in a condition of readiness and availability to perform the function for which it was built– in this instance to house and secure racks, shelving and merchandise. The court finds that the Walker and Broussard buildings were placed in service prior to December 31, 2008 fully qualifying the taxpayer to take advantage of the "Go Zone" bonus depreciation allowance.

The court would make this finding whether we decided this case based on either a liberal or narrow construction. The case law and the fact that the lawmakers know how to word statutes, rules and regulations, and understanding that Congress could have easily expressed that a building would be placed in service when open for business leads this court to believe that there is no requirement that a building be open for business in order for it to be placed in service for purposes of a depreciation allowance.

## CONCLUSION

For the reasons set forth above, the motion for summary judgment filed by Stine, LLC will be granted and the motion for summary judgment filed by the USA will be denied. Although attorney fees were sought by Stine in the prayer, there was no statutory authority mentioned by Stine either in the complaint, the motion for summary judgment, the briefs in support thereof, or at oral arguments. The court will enter judgment based upon its opinion on the issues briefed and argued. If Stine wishes to pursue the issue of attorney fees, it may move to reopen for that limited purpose.

The court will be guided by the law which may or may not allow attorney fees and which may require the court to deem the claim waived inasmuch as it was not presented beyond mention in the prayer.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 27th day of January, 2015.

                                                                  JAMES T. TRIMBLE, JR.
                                                                  UNITED STATES DISTRICT JUDGE